ROGERS, Circuit Judge,
concurring in part and dissenting in part:
When an agency receives comments that object to its application of a statutory term *566 as being contrary to the plain text of the statute, what is the agency to understand is the target of the objection? The specific application or the agency’s underlying interpretation of the term or both? The court responds only the application. But the answer depends on how the comments are phrased. If, as here, the comments address a specific application by pointing out that it reflects an interpretation of a statutory term that contradicts the plain text of the statute, how can the agency respond to the comments without considering whether its definition is consistent with the statute, much less how would it not be on notice that the comments extended to the agency’s interpretation of the statutory term?
The NRDC objected to EPA’s interpretation of the term “natural event,” 42 U.S.C. § 7619(b)(l)(A)(iii),[1] as applied to emissions arising from clean-up activities associated with natural disasters, explaining that such an interpretation was inconsistent with the statutory text and the legislative history. It offered these comments in the context of addressing EPA’s list of examples of “natural events” in the preamble to the notice of proposed rule-making, The Treatment of Data Influenced by Exceptional Events (“NPRM”), 71 Fed. Reg. 12,592, 12,596 (Mar. 10, 2006). NRDC Comments, at 4-5. Given the stated reason for the objection to the application and the context, it is unclear what rule follows from the court’s approach for there is no heightened comment requirement under the Administrative Procedure Act, the Clean Air Act, or our precedent.
(i) affects air quality;
(ii) is not reasonably controllable or preventable;
(iii) is an event caused by human activity that is unlikely to recur at a particular location or a natural event; and
(iv)is determined by the Administrator through the process established in the regulations promulgated under paragraph (2) to be an exceptional event.
42 U.S.C. § 7619(b)(1)(A) (emphasis added).
Although section 307’s exhaustion requirement is “strictly” enforced, Motor & Equip. Mfrs. Ass’n v. Nichols, 142 F.3d 449, 462 (D.C.Cir.1998), our precedent explains that “commenters must be given some leeway in developing their argument before this court, so long as the comments to the agency were adequate notification of the general substance of the complaint.” S. Coast Air Quality Mgmt. Dist. v. EPA, 472 F.3d 882, 891 (D.C.Cir.2006). Likewise, our precedent rejects the idea that the exhaustion requirement calls for hairsplitting. E.g., Appalachian Power Co. v. EPA, 135 F.3d 791, 817 (D.C.Cir.1998). For example, in National Petrochemical & Refiners Association v. EPA, 287 F.3d 1130 (D.C.Cir.2002), the court concluded that although the comments did not specifically mention the cold-start portion of the Federal Test Procedure, they did “raise the underlying issue of poor performance at certain temperatures,” id. at 1139, and consequently the comments were “close enough to have put the EPA on notice that it had to defend the performance of the NOx adsorbers at all relevant temperatures and conditions,” id. at 1139-40. So too here, where the comments and the structure of the NPRM both indicate that EPA was put on notice of NRDC’s underlying objection to the definition of “natural event.”
The comments at issue stated:
[1] Under no circumstances can the clean-up associated with a natural disaster itself be considered a “natural event.” [2] EPA’s suggestion to the contrary flies in the face of the plain *567 statutory language. [3] The statute clearly and explicitly distinguishes between “natural event[s]” (events that do have a human origin) and “events caused by human activity.” [4] A natural event is one that is not the result of human activity. [5] For example, the Legislative History identifies only forest fires and volcanic eruptions as examples of natural events. [6] While the level of human activity that discharges pollutants may increase in the wake of a natural disaster, emissions from cleanup activities (such as debris burning, operation of diesel equipment, and demolition activities) are clearly events caused by human activity, and may not be classified as “exceptional events” unless they meet each of the requirements of section 319 for qualifying anthropogenic events.
[7] In short, the activities themselves that are responsible for the emissions (and possible violations of NAAQS) are of human origin, and by definition not natural events. [8] The fact that a natural event precipitates the need for human activity cannot and does not transform the human activity itself into a natural event. [9] Thus, the Act clearly precludes EPA from identifying emissions from clean-up activities as “natural events” that qualify as exceptional events.
NRDC Comments, at 4-5 (internal citation omitted) (alteration other than numbering in NRDC comments).
It is readily apparent these comments put EPA on notice that the NRDC was objecting to its broad interpretation of the statutory term “natural event.” Although the comments do not expressly refer to 40 C.F.R. § 60.100, which codifies EPA’s definition of “natural event,” the introductory phrase — “[ujnder no circumstances” — signals an underlying concern with EPA’s interpretation of what can qualify as a “natural event.” So introduced, the second sentence makes clear that the preceding reference to a particular application is grounded in an objection to the agency’s interpretation of what is a “natural event” as too broad and contrary to the plain statutory text. The third sentence explains why, pointing to the distinction in the statute between natural events and those caused by human activity. See 42 U.S.C. § 7619(b)(l)(A)(iii). The fourth sentence states the conclusion that follows in the commenter’s view. Support for that view is offered in the fifth sentence’s reference to an illustrative example in the legislative history. The sixth sentence identifies the confusion that the agency’s broad interpretation reflects, given the statutory distinction and inclusion of specific exceptions. The second paragraph makes the same point: the statute bars EPA from including such an application in its listing of examples of a “natural event” because clean-up activities and other events resulting from human activity are inherently (as opposed to impliedly) human activities and thus not a “natural event.”
Even if the entirety of the above-quoted comments did not put EPA on notice that the NRDC was objecting to its interpretation of “natural event,” the fourth sentence did. Following a sentence noting the statutory distinction, the fourth sentence states: “A natural event is one that is not the result of human activity.” [3-5] This alone was fair warning that, according to the NRDC, the statute precludes treating any human-caused activity as a “natural event.” As the fourth sentence was made in the context of addressing EPA’s application of its definition, the comments were “close enough,” Nat'l Petrochem. & Refiners Ass’n, 135 F.3d at 817, to have put EPA on notice that the commenter was challenging the agency’s definition of a statutory term. Either way EPA could not avoid being aware that the NRDC’s comments objected to the underlying broad interpretation of “natural event” and *568 so met the Clean Air Act’s “reasonable specificity” requirement, 42 U.S.C. § 7607(d)(7)(B).
This is not an instance in which the agency would be unclear as to what the comments addressed or have to “wade through reams of documents searching for ‘implied challenges,’ ” Op. at 564-65 (quoting Mossville Envtl. Action Now v. EPA, 370 F.3d 1232, 1240 (D.C.Cir.2004)). The comments state on the first page that they are addressing “elements of EPA’s March 10 proposal,” i.e., the NPRM, and explain why, as demonstrated by one example in the preamble’s listing of examples, EPA’s interpretation of “natural event” could not be consistent with the plain meaning of the statute, see Op. at 564, pointing to the statutory text and the legislative history, [3]-[5]. Even speculating — contrary to EPA’s proposal, see NPRM, 71 Fed.Reg. at 12,596 — that EPA’s view of clean-up activities was based on the definition of “exceptional events” as including human activities “unlikely to recur at a particular location,” see Op. at 563-64, the comments would alert EPA to the objection that the statute does not permit an activity with any human cause to be an “exceptional event” unless the statutory criteria for an “event caused by human activity” were satisfied, [6]. In fact, by using separate sections and headings in the comments to address each possibility, NRDC’s comments object to the proposed rule’s treatment of clean-up activities as “exceptional events” either as natural events or events caused by human activity.
The specified context of the comments, especially-the placement of the clean-up-activities example in that part of the NPRM where EPA was giving examples of how its definition of “natural event” would be applied also shows that EPA was on notice of the objection to its interpretation of “natural event.” The comments address a sentence in the NPRM involving clean-up activities after a natural disaster, see Op. at 563, that appears in the section of the preamble to the proposed rule giving examples of “natural events.” NPRM, 71 Fed.Reg. at 12,596 (“5. Natural Events”). The comments thereby direct the reader to the underlying concept that is at issue: a broad interpretation of “natural event” that includes activities with some human contribution. Together, the text and structure of the comments and placement of the clean-up activities example in the NPRM’s listing sufficed to put EPA on notice that the NRDC was objecting to EPA’s definition of “natural event.” Nothing in the NRDC’s petition for reconsideration suggests its earlier comments had not raised an objection to the agency’s interpretation of “natural event.” See Op. at 564. In the petition the NRDC complains only that earlier comments could not have objected to justifications for the definition that appeared for the first time in the preamble to the final rule, namely certain legislative history, a previous rule-making proposal, and new illustrative examples. In any event, the rehearing objection to EPA’s definition of “natural event” tracks the NRDC’s earlier comments.[2]
*569 Nonetheless, although EPA was on notice that the NRDC was objecting to its broad interpretation of “natural event” in a manner that would include human activities, the NRDC’s objection fails on the merits. The Clean Air Act does not define “natural event” or specify how to categorize events with predominantly natural causes but some human contribution. Because the statute leaves a gap to be filled by EPA, the statutory term is ambiguous. EPA’s definition, in turn, is permissible. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As EPA offers, “human activities sometimes contribute to otherwise spontaneous events,” Respondent’s Br. at 33; see also Treatment of Data Influenced by Exceptional Events (“Final Rule”), 72 Fed.Reg. 13,560, 13,563 (Mar. 22, 2007), such as a planned forest fire that gets out of control because of unforeseen circumstances. Still, the question whether EPA’s application of the term “natural event” to particular circumstances will, in fact, be permissible is for another day, as EPA’s listing of examples is neither exhaustive, see Final Rule, 72 Fed.Reg. at 13,564, nor binding on it, see Op. at 565; cf. Cement Kiln Recycling Coal. v. EPA, 493 F.3d 207, 226-28 (D.C.Cir.2007); Interstate Natural Gas Ass’n of America v. FERC, 285 F.3d 18, 60 (D.C.Cir.2002).
Accordingly, I respectfully dissent from Part II of the opinion and otherwise concur.

. The Clean Air Act defines "exceptional event” as an event that—

. In seeking reconsideration of the final rule, NRDC stated:
The Final Rule's interpretation of the statutory term "natural event" is an unlawful departure from the clear language of the statute. The statute identifies a dichotomy whereby events are either "natural” or "caused by human activity". 42 U.S.C. § 7619(1)(A). Since the statute (and logic) does not permit an event to be both natural and caused by human activity, a "natural event” has no human activity. Petition for Reconsideration of the Natural Resources Defense Council, In the Matter of the Final Rule: Treatment of Data Influenced by Exceptional Events, No.2060-AN40, at 5-6 (E.P.A. May 21, 2007).